# MERCANTILE BANK OF THE AMERICAS, INCORPORATED, Plff.

*v.*

# WEST PORTO RICO SUGAR CO., INCORPORATED, et al., Dfts.

San Juan, Equity, No. 1071.

ASSIGNMENT OF SECURITY.

Equity—Promissory Note—Carries Security.

    1. In equity where a negotiable promissory note is accompanied
by a second instrument given as security, whether it be a pledge,
a deed of trust, a mortgage, or any contract of similar nature,
the transfer and delivery of such promissory note carries with
it all rights and privileges which may arise from such accompanying written instrument.

Special Master—Practice on Report.

    2. Where exceptions are filed to the report of a special master,
and the court fails to find that the special master has made any
error of law, or found any fact contrary to evidence properly submitted exceptions must be overruled.

Opinion filed July 25, 1921.

Opinion of the court overruling the exceptions filed by the
Banco Territorial y Agrícola de Puerto Rico to the report of
the special master sustaining the claim of the Banco Comercial.

Mercantile Bank v. West Porto Rico Sugar Co.

*Mr. Juan Guzman Benilez,* attorney for the Banco Territorial
y Agrícola.

*Mr. J. Henri Brown,* attorney for Banco Comercial.

ODLIN, Judge, delivered the following opinion:

In this case separate interventions were filed by the two
banks above mentioned and the claim of the Banco Comercial
was contested before the special master by the Banco Terri-
torial y Agrícola, but was not contested by any of the other
parties to this litigation. The matter was carefully heard by
the Honorable Peter J. Hamilton as special master, and on
the 20th day of May, 1921, he filed his report in favor of the
Banco Comercial. Soon thereafter exceptions to this report
were filed by counsel for the Banco Territorial y Agrícola and
those exceptions have been argued before the court, not only
orally, but by extensive briefs. The matter has been carefully
considered by the court, and I am of the opinion that the
report of the special master is correct. and that the exceptions
thereto above mentioned should be overruled; and in connec-
tion with this order it is only fair to the parties that the court
should state its reasons for the conclusion now reached.

At the outset it must be kept in mind that this entire pro-
ceeding is one in equity, this court having taken jurisdiction
of all the controversies involving the affairs of the West Porto
Rico Sugar Company, Inc., admitted to be insolvent, and that
there are many creditors, including several banks, the bill
being originally filed by the Mercantile Bank of the Americas,
Inc., a New York corporation, and the controversy now de-

cided by this opinion being one limited to the said Banco Territorial y Agrícola and the said Banco Comercial. These two last-named banks, being allowed to intervene in this proceeding, are both bound by the primary doctrine that he who seeks equity must do equity. Therefore, the Banco Territorial y Agrícola, when it comes into this court voluntarily seeking relief, necessarily is bound by the rule that the Banco Comercial, a separate intervener, must have its rights protected by this court to the same extent and with the same care as the court is bound to do with respect to the rights and obligations of the former bank.

The exceptions in question are six in number and will be discussed separately.

The first exception is based upon the claim that the thirteen (13) promissory notes referred to in the report of the special master, which were guaranteed by crop-lien contracts, were not properly ceded and transferred to the Banco Comercial, but that the special master found that they were. The evidence shows that these thirteen (13) notes represented money advanced to the respective signers for the purpose of producing cane, which cane was thereafter converted into sugar at the mill of the West Porto Rico Sugar Co., Inc., and that this was done by means of express contracts. Each of these contracts expressly covered an agreement for the purchase and the grinding of the cane as well as for advances enabling such cane to be produced. Each note is clearly identified with its own contract, and the connection is clear between each note and the obligation of the West Porto Rico Sugar Co. arising out of said contract. It is impossible for me to avoid the conclusion that the special master decided correctly in holding

that these notes were transferred in a valid and legal manner to the Banco Comercial and are now held by it.

In and by the second exception it is claimed that the special master erred in finding that each of said contracts was properly assigned to the Banco Comercial; and also in holding that the provision for further advances upon the contract made with Alfredo Raffucci protects said contracts at the present time since they were made before the assignment. This court is unable to see any merit in that suggestion. The arrangement made by Raffucci with the West Porto Rico Sugar Co. was known to and approved by the various parties who signed the promissory notes in question, and the sugar which was produced as heretofore stated was thereafter sold and turned into money, which money should be deemed a trust fund so as to protect the parties directly interested in that trust, and the Banco Territorial y Agricola being a mortgagee and general creditor of the West Porto Rico Sugar Co. has failed to show that it has any interest in this fund superior to the equity of the Banco Comercial.

The third exception is based upon the claim that there was error by the special master in his finding of law that a decree should be entered directing that the funds already in hand to the credit of these respective accounts as they stood at the end of April, 1921, should be paid over to the Banco Comercial by the receivers and credited by said bank, and that a similar payment and accounting should be had at the end of each month throughout the crop season. It is sufficient to say that the court will take judicial notice of the custom prevailing in Porto Rico with respect to the planting and growing of sugar cane upon lands of different individuals who are forced to

Mercantile Bank v. West Porto Rico Sugar Co.

sell or deliver the cane product to some mill. These agri-cultural advances are always distributed over monthly periods or other periods during the year which follow the date of the contract, and it is also customary to have an inspection made just before the payment of each instalment. The reason for this is clear. If all these advances agreed upon (technically known as *refaccion* contracts) should be paid over by the lender at the time of the signing of the contract, uncertainty would arise whether the various plantations controlled by the different signers of the notes would be kept up. Therefore, these advances are made in instalments according to the expenses necessarily incident to the different degrees or stages of the growth of the product upon the respective properties.

The fourth exception is based upon the claim that the special master committed error when he held that the Code of Commerce is not applicable to corporations in respect to the supposed obligation resting upon them to have their commercial books formally sealed by a municipal court or judge thereof, in order that such books shall be properly introduced in evidence and enable such corporations to claim compliance with the provisions set forth in such Code of Commerce. It is my opinion that, inasmuch as the Banco Territorial y Agrícola was chartered previous to the general law of corporations in the Island of Porto Rico, the clauses of the Code of Commerce cited by counsel for said bank may perhaps be applicable to that bank; it is not necessary for this court at this time to decide that question, and this opinion is not to be taken as expressing any opinion of the undersigned upon that point; but this court is very clear on the point that, where a banking corporation has been created since the date of the passage of the

Mercantile Bank v. West Porto Rico Sugar Co.

general incorporation law, in the Island of Porto Rico, such banking corporation may not be deprived of any of its rights or privileges in the absence of a showing that there has been a violation of some of the provisions of the said general incorporation law. In other words, I am not convinced that a bank lawfully chartered by the legislature of Porto Rico is under any legal obligation to have its books of account presented to the municipal court in order that such books may be introduced in evidence.

The fifth exception is based upon the claim that the special master committed error when he held that the controversy between these two banks was of a nature such as to exclude the application of the rules of evidence mentioned in the Code of Commerce. This point has been discussed already with respect to the previous and last-mentioned exception.

The sixth and last exception is based upon the claim that the special master committed error when he held that articles 1764–1774, inclusive, and also articles 1184–1192, inclusive, of the Civil Code were not applicable to this present controversy, because the validity of the contracts now under discussion is not at issue; and it is further claimed by the Banco Territorial y Agrícola in this sixth exception that the special master erred when he held that indorsement was a lawful method of transferring ownership in commercial transactions. It seems to me that it is a sufficient answer to this sixth exception to call attention to the record in this case, which clearly shows that all these promissory notes were negotiable. They were transferred for value to the Banco Comercial, and it is conceded that the latter bank is now the holder of all said notes. It is also a well-settled principle in equity that where a ne-

gotiable promissory note is accompanied by some second instrument in writing given as security, whether such second instrument may be a pledge or a deed of trust or a mortgage, or any contract of similar nature, the transfer and delivery of such promissory note carries with it all the rights and privileges which may arise from such accompanying written instrument.

Applying these well-known principles of equity, I am satisfied that the findings of the special master are correct, and his report in this respect is confirmed; and the exceptions filed by the Banco Territorial y Agrícola are now overruled.

It is so ordered.